**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ARON SPITZER

            Plaintiff

    v.

HALSEY ENGLISH a/k/a
SCOTT ENGLISH

          Defendant

Civil Action No. 2:23-cv-03195

**COMPLAINT**

## I.  PRELIMINARY STATEMENT

Plaintiff Aron Spitzer ("Mr. Spitzer") brings this action, by and through his undersigned counsel, as a victim of two of Ponzi Schemes owned and operated by Defendant Halsey English a/k/a Scott English in the cryptocurrency market. Mr. English and Mr. Spitzer entered into an agreement where Mr. English induced Mr. Spitzer to invest $ 250,0000 in cryptocurrencies, including Mr. English's creation of a cryptocurrency.  Ultimately, after stringing him along for upwards of a year, Mr. English kept all of Mr. Spitzer's money. Mr. Spitzer brings this instant action seeking damages for both his investments in the crypto market and his funding for Mr. English's novel cryptocurrency.

## II.  JURSIDICTION

1.     This Court has jurisdiction over this action by virtue of 28 U.S.C. Section 1332, as the Complaint involves a civil action between citizens of different states and the amount in controversy exceeds $75,000.00.

2.     Venue is proper pursuant in this Court pursuant to 28 U.S.C Section 1381 because the Defendant resides within the district in the state of New Jersey.

1

III.     **FACTS**

**The Parties:**

3.      Plaintiff Aron Spitzer, is, and at all times mentioned herein was, a United States citizen domiciled in the State of New York with a residential address of 5001 14th Avenue # E2, Brooklyn, New York.

4.      Plaintiff is informed and believes, and thereon alleges, that Defendant Halsey English a/k/a Scott English ("Mr. English") is a United States citizen domiciled in the State of New Jersey with a residential address of 711 Walnut Street, Roselle Park, New Jersey.

**Mr. English's Scheme As A Cryptocurrency Financial Advisor**

5.      Mr. English is an entrepreneur in the cryptocurrency market, who, upon information and belief, scams people by inducing them to invest large sums of money under his care, then mismanages and/or keeps the entire investment. As one of his many schemes in the cryptocurrency market, Mr. English travels between Jewish communities to find investors to dupe them into providing him funds to "invest" with the promise of massive return on investment. The basis of this scheme is for Mr. English to swindle vulnerable investors to provide him with funds to invest on their behalf. Rather, he keeps the money for himself and skips town.

6.      To induce victims to provide funds to Mr. English, he shows falsified investment returns and/or guarantees similar results. Mr. English holds himself out to be a cryptocurrency expert, stating to his victims that he has extraordinary knowledge of the cryptocurrency markets, and the ability to predict the perfect time to invest in cryptocurrencies.

7.      Mr. English also runs a podcast, accessible by most or all of the major podcasting outlets where he discusses and provides general information about cryptocurrencies.

8. Mr. English gains the trust of members in the Jewish communities by becoming involved in their religious workings, often by providing a large donation to the community and religious institutions. Mr. English befriends members in the community very quickly, then uses them and their respectable reputation to gain trust within the community.

9. Upon knowledge and belief, Mr. English never intends to invest to the money or return the funds under his care for investment. After Mr. English has depleted the victims or his reputation has soured, Mr. English simply skips town and moves to the next community.

10. As part of his scheme to maximize his profits, Mr. English awards a commission to investors who bring other victims into the scheme and invests with Mr. English.

11. Upon information and belief, Mr. English does not have a financial license or any certification that would justify holding himself out as a financial advisor or manage investments for profit.

### Mr. English's Scheme in Atbash Protocol

12. In addition to this, Mr. English ran another scheme by making a novel cryptocurrency where he swindled investors to purchase the token[1], then pull the rug from under them. Mr.  English, as the sole owner and operator, launched a crypto currency called Atbash Protocol. Mr. English induced victims to purchase his token under the false promises that those who invested fifty percent of the purchase price of a home, Lamborghini, student loan, etc., they would be returned one hundred percent of their initial investment within thirty days, or at the very least, guaranteed to be returned equal money.

13. Mr. English even bragged to his investors in a virtual conference about the implication of the "Lamborghini forecasting tool" wherein investors can forecast how many

---

[1] A token in terms of cryptocurrency is a digit representation of interest in an asset or used to facilitate transactions. These tokens are traded similarly to stocks or money. The value of a token should be determined by the market, except when unduly interfered with by the creator.

Lamborghinis they can purchase based upon the amount invested and the time the investor did not ask for their investment to be returned.  A further explanation of Atbash Protocol is set forth below.

14.    Mr. Spitzer fell victim to Mr. English both as an investor with Mr. English and as an investor to Atbash Protocol.

15.    Atbash Protocol is a cryptocurrency created by Mr. English that was only briefly tradable on the Ethereum blockchain. Exhibit A, page 2. The native token to Atbash Protocol was $BASH tokens. Exhibit A, page 2. According to the Whitepapers[2], the promised function of Atbash Protocol is as follows:

> The $BASH token will allow the Atbash Protocol to provide assistance
> for the purchase of properties, supplies, business start-up capital and property
> improvement all while still providing a substantial APY for investors & liquidity
> providers alike. The Atbash Protocol isn't just joining the market, it's leading the
> market!

16.    AtBash Protocol was averred by Mr. English to remedy major issues in similarly structured cryptocurrencies that inevitably failed. Specifically, Atbash Protocol held a treasury of funds that would purportedly return 100% on investments to those who locked their tokens in the treasury for only 30 days.

17.    Atbash Protocol was purported to offer the same services as traditional banks, replacing mortgages, small business financing, student loans, and other financing. In the Whitepapers, it states that an initial investment of $500 would be worth over $ 27,500,000 due to its high yield staking.

---

[2] Whitepapers are a guide for current and potential investors, published by the creators of a cryptocurrency, to provide information on the purpose of the cryptocurrency, the goals of the project, how the project works, and any other information that the creators wish to convey.

18.     Atbash Protocol launched a Pre-Sale event[3] in or around January 2022. At the outset, only 100,000 $BASH were minted, with 80,000 tokens available for presale.

19.     To induce investors, Atbash Protocol ran social media giveaways where investors could earn free tokens by referring to and posting about Atbash Protocol.

20.     On August 2, 2022, Mr. English was a guest in an "Ask Me Anything" (AMA)[4] teleconference held on the messaging platform Telegram. *See* Exhibit B. The event was hosted by Acell Defi, another cryptocurrency group. Investors of any cryptocurrency were invited to attend the teleconference to learn about Atbash Protocol.

21.     During the teleconference, Mr. English discussed the purported purpose of Atbash Protocol and how it would work for investors. Mr. English described that Atbash protocol would reward those who staked[5] $BASH in the treasury, beginning at 12,000% Annual Percent Return (APR), but will settle at 4,000 % APR.

22.     Mr. English further explained that he would be creating grants for those who locked their tokens in the treasury for a period of 30 days.  The purpose of the grant was to provide a 100% return on investment, where an applicant would provide half of the funds for what would otherwise be handled by traditional-fixed loans and would receive double their money back in only 30 days.

---

[3] A Pre-Sale Event is often used in cryptocurrency projects to obtain funds to create liquidity pools. Since the token is new, it is typically not compatible with other tokens, or there is often not enough volume for enough buyers or sellers on the other side of the trade. Creators of tokens raise funds and set aside tokens in a liquidity pool so that buyers can buy the token when there is not a seller on the other side of the trade and vice versa.

[4] An Ask Me Anything, commonly referred to as an AMA is common way for cryptocurrency creators to communicate with investors and give updates on projects.

[5] The process of staking is when an investor locks his tokens into the blockchain for a period of time to provide proof of verification of the tokens being purchased and provides security in the blockchain. An investor may gain interest or other reward by locking their tokens for a set period of time.

23.     Mr. English uses the example of student loans, mortgages, car loans, and farming equipment in the AMA, stating that an applicant would lock half of the funds for the purchase and be returned the whole amount for the purchase. Mr. English also stated that about 30-40% of applicants would be accepted while the others would be return their money plus staking interest with priority to be accepted the next month.

24.     Mr. English further stated that there would be no vetting process or even disclosure of who the applicants are—the only requirements for a valid application had some type of proof that the money will be used for a qualifying purchase.

25.     Mr. English also boasted about a Lamborghini calculator where potential investors were able to go to Atbash Protocol's website and calculate how many Lamborghinis they can buy with the return on their initiation investment.

## How the Parties Became Acquainted

26.     Mr. Spitzer became acquainted with Mr. English through mutual connections in a Hasidic (Jewish) community located in Union, New Jersey. In or around December of 2022, Mr. English quickly became involved in the community by providing a large donation for religious projects in Union, New Jersey.

27.     Mr. English began gaining the trust of highly respected members in the community as purporting to be a wealthy philanthropist and successful cryptocurrency investor. He openly discussed his cryptocurrency investments, purporting that it allowed him to make such donations.

## Mr. English's Seminar to the Community

28.     On or around January 6, 2022, Mr. English gave a seminar on how to make money in the cryptocurrency markets. The seminar was attended almost exclusively by those in the Community that Mr. English had personally invited or induced others to invite through payment of commission.  Specifically, Mr. English began to tell fairytales about how he could make those who invest with him large sums of money in excess of a million dollars in a short period of time. Mr. English spoke about his expertise in the market, averred to the attendees that he knew the perfect timing to enter and exit the market, and that the attendees were guaranteed to make money through his investments. Mr. English provided "real life" examples of his own "earnings" from the cryptocurrency market and those who he provided investment services in the recent past.

29.     Upon information and belief, Mr. English showed exaggerated gains, and/or funds that were not actually gained through investments, to induce the community into investing with him. Mr. English did not speak about the inherit risk of investments in the cryptocurrency, including the extreme volatile nature of the market, the fact that the cryptocurrency market was in a massive downward spiral at the time, the risks associated with the lack of federal and state regulation of the cryptocurrency market, or that the results presented were not real or outliers to the typical investor.

30.     Mr. Spitzer was very impressed by Mr. English and the prospects of becoming a client of Mr. English. The next day, members of the community that Mr. Spitzer knew to be closely related to Mr. English approached Mr. Spitzer to speak further about the seminar.

31.     From January 7, 2022, until February 14, 2022, members of the community urged Mr. Spitzer to speak directly with Mr. English about investing a large sum of money with Mr.

English. Mr. English's followers represented to Mr. Spitzer that he could not wait and that he would be missing out on guaranteed returns on his investment.

32.     Upon information and belief, Mr. English targeted Mr. Spitzer upon learning that he had a substantial amount of money that could be invested. Upon information and belief, Mr. English used members in the community that Mr. Spitzer trusted to pressure Mr. Spitzer to meet with Mr. English about investing in cryptocurrencies until eventually, Mr. Spitzer agreed to meet with Mr. English.

### Mr. Spitzer's Personal Meeting with Mr. English

33.     Unless otherwise stated herein, all communications between the parties occurred via Whatsapp through voice message or text.

34.     On or about February 14, 2022, Mr. Spitzer and Mr. English met at 413 Bergen St. Union, New Jersey.

35.     Mr. English echoed all the information that he stated in his seminar. Specifically, Mr. English stated that he was an expert in the cryptocurrency markets, real estate markets, and based upon his knowledge, experience, and expertise of investing in the cryptocurrency market, he can guarantee that Mr. English would multiply Mr. Spitzers initial investment in a matter of weeks. Upon information and belief, Mr. English told Mr. Spitzer fictions about clients that he had made extremely wealthy and his own personal wealth that he made in the cryptocurrency markets.

36.     Mr. English began the conversations on the prospects of a Russian invasion in Ukraine, that was expected to occur the next day. Mr. English stated that the inevitable Russian invasion would cause the cryptocurrency market to explode upward. Mr. English further stated that the inevitable invasion would render Ukraine's money worthless, and that Ukraine will

move a large portion of their financial interactions to cryptocurrency. Mr. English urged Mr. Spitzer that this was the perfect time to invest and stated that he did not have time to wait or else he would be missing out on the investment of a lifetime.

37.     Mr. Spitzer was doubtful and challenged Mr. English on the stability of cryptocurrency but Mr. English had ensured Mr. Spitzer that cryptocurrency was the safest investment. Mr. English spoke fairytales that cryptocurrency will stabilize the world economy and was the only sure way to grow an investment in the state of the economy. Mr. English stated that  he knew of "deep state" officials and high-ranked government personnel were all in on the imminent downfall of currency and had their wealth invested in cryptocurrency.

38.     Mr. English did not speak about the risks associated with cryptocurrency or the historic volatility of cryptocurrency.

39.      Mr. English knew or should have known that the Russian invasion would be averse to the cryptocurrency markets or at the very least, had a reasonable possibility that . Rather, upon information and belief, Mr. English made these statements to make Mr. Spitzer believe he had specialized knowledge of the cryptocurrency markets and financial investments.

40.     After gaining the interest of Mr. Spitzer, Mr. English quickly shifted discussions to investing in his novel cryptocurrency that he created called Atbash Protocol. Mr. English guaranteed that he could multiply Mr. Spitzer's investment in Atbash Protocol. Mr. English purported that the novel cryptocurrency had real-life use that would ultimately replace traditional bank loans by guaranteeing that loan applicants could double their money in a month's time through staking half of the purchase price in the cryptocurrency and be returned the entirety of amount due.   Mr. English averred that the cryptocurrency would begin trading only two days and that he needed Mr. Spitzer's investment in the next two days.

## Agreement Between the Parties

41.     Mr. Spitzer agreed to use Mr. English as an investment professional and to act in in the best interest of Mr. Spitzer with the money he invested.

42.     The parties agreed that Mr. Spitzer would invest $200,000 under the care and control of Mr. English. One-half of the investment was to be invested in cryptocurrencies accounts and the other half was to be invested in the Pre-Sale of Atbash Protocol. In addition, Mr.

43.     As a condition of the agreement, Mr. Spitzer retained the right to request the payment in whole or in part of his investment upon 24 hours' notice to Mr. English at any time. Upon such request, Mr. English was required to pay Mr. Spitzer the balance of his investment or a lesser amount requested minus a 10% commission from the gains of the investment, which Mr. English retained for his services.

44.     In addition, Mr. English was required to provide Mr. Spitzer with periodic updates on the performance of his investment.

## Mr. Spitzer's Investments

45.     On or around the next day, February 15, 2022, Mr. Spitzer wired Mr. English $100,000 for the purpose of investing in cryptocurrencies on his behalf pursuant to the terms set forth in the meeting. Mr. Spitzer wired an additional $100,000 for an investment in Atbash Protocol, totaling $200,000.  See Exhibit C & D.

46.     Mr. Spitzer requested to memorialize the terms of the agreement in writing. Mr. English sent Mr. Spitzer only sent one receipt of the payments memorializing the general terms of the agreement. Exhibit E.

47.     On or around February 23, 2022, Mr. English stated to Mr. Spitzer that Atbash Protocol suffered a minor delay but would be launching that night. The reason for the delay as

stated was a technical issue. However, Mr. English stated that Mr. Spitzer was able to purchase his tokens in Atbash at $53 a token with a launch price of $80, automatically awarding Mr. Spitzer with about 50% of unrealized gains at the outset.

48.     On or around March 18, 2022, Mr. English informed Mr. Spitzer that his investment was up $66,000 since the outset, in addition to the $ 100,000 investment that was still held in the pre-sale account for Atbash Protocol.

49.     On March 24, 2022, Mr. Spitzer and Mr. English met to discuss his investments. Mr. English provided Mr. Spitzer with a performance report showing that his investment was worth $ 196,486.46 Exhibit G.

50.     On April 13, 2022, Mr. English informed Mr. Spitzer via Whatsapp that the investment was up an additional 26% from the last update.

51.     On April 18, 2022, Mr. English informed Mr. Spitzer that his investment was up a total 28.5% since the April 13, 2022 update.

52.     On or around April 26, 2022, Mr. Spitzer made a written request to withdraw $ 82,500 of his total investment at the time via Whatsapp. Pursuant to the agreement, Mr., English would retain 10% and Mr. Spitzer was due $ 75,000 within 24 hours.

53.     Mr. English advised Mr. Spitzer that he would need to wire the money through his cryptocurrency account to his banking account and then to Mr. Spitzer.

54.     On April 28, 2022, Mr. Spitzer provided his banking information for wiring.

55.     An additional wire was made to Mr. English on or around April 29, 2022, Mr. English contacted Mr. Spitzer requesting an additional $50,000 for an investment in a brand-new cryptocurrency. Mr. English guaranteed Mr. Spitzer that he would be able to return $ 75,000 the next day. Exhibit F.

56.     Mr. Halsey agreed to send Mr. Spitzer a receipt for this payment but failed to do so. When Mr. Spitzer requested a receipt of payment from Mr. Halsey, he simply avoided the request and switched the subject. Mr. Spitzer continually pressed Mr. Halsey for any kind written verification, but Mr. Halsey purposefully avoided the request.

57.     Throughout May 2022 Mr. English and Mr. Spitzer agreed to meet and discuss the delay in the wire transfer, but Mr. English repeatedly made excuses or outright ignored Mr. Spitzer

58.     On or around May 1, 2022, Mr. English told Mr. Spitzer it was his daughter's birthday and could not meet him.

59.     On May 2, 2022, Mr. English told Mr. Spitzer that a contractor was coming a day earlier than expected to complete work on his home.

60.     On May 4, 2022, Mr. English said he was not feeling well and could not meet with Mr. Spitzer.

61.     On May 5, 2022, Mr. English said he was still ill but that the money should be available at any time.

62.     On May 10, 2022, Mr. English advised Mr. Spitzer that he had wired the money to Mr. Spitzer and that he would get e-mail confirmation in a few hours.

63.     On May 11, 2022, Mr. Spitzer had not received the money and Mr. English did not have any confirmation to provide Mr. Spitzer. Instead, Mr. English showed Mr. Spitzer an image of what he purported to be his personal bank account. Exhibit H.

64.     By May 17, 2022, Mr. Spitzer still had not received the funds. The parties agreed to meet at Mr. English's office the next day at 2:30 p.m.

65.    Mr. English again canceled last minute and rescheduled to May 19, 2022, at 1:00 p.m. Mr. English wrote Mr. Spitzer a personal check that bounced.

66.    On May 30, 2022, Mr. Spitzer informed Mr. English that he was in town but Mr. English denied meeting with him, despite owing him $ 75,000 and having hundreds of thousands of dollars in his care. *See* Exhibit J.

67.    On June 3, 2022, Mr. Spitzer still was not paid, but reassure him that Mr. English was good for the money, Mr. English sent Mr Spitzer receipts of his gambling winnings as proof of funds. Exhibit I.

68.    On June 10, 2022, Mr. English provided Mr. Spitzer with another account update Exhibit H. The balance stated in the fund was $ 562,331.11. As shown, the $ 75,000 withdraw that was never received was already calculated out of the balance. Exhibit J.

69.    Mr. English continued to string Mr. Spitzer along, making more and more excuses as to why he could not meet or provide funds to Mr. Spitzer.

70.    On July 12, 2022, Mr. English told Mr. Spitzer that he was at the bank to receive a guaranteed check for him, but again stated he had problems.

71.    On July 14, 2022, Mr. English again told Mr. Spitzer that he was at the bank getting the check for him, then again made the excuse that he had more issues with the bank.

72.    On July 15, 2022, Mr. Spitzer and Mr. English agreed to sending the money through BitPay. Mr. Spitzer created an account, but again Mr. English told him he was unable to make the transfer.

73.    Mr. English continued to strong Mr. Spitzer along throughout August 2022, stating he had issues with the IRS, then issues with the banks again, until he eventually went

radio silent and ignored all of Mr. Spitzer's correspondences from August 30, 2022 until September 12, 2022.

74.     After again making excuses, Mr. English ignored Mr. Spitzers correspondences from October 2022 until January 2023 where Mr. Spitzer eventually gave up trying, as it became clear to him that he was scammed.

### Atbash Protocol's Downfall[6]

75.     After many delays in the launch of Atbash Protocol, on or about July 15, 2022, Atbash Protocol purported to launch its token and make it publicly available for trading. At this time, Mr. English told Mr., Spitzer that Atbash Protocol had over 500 applications ranging from $ 30,000 to $2,000,000.

76.     By December 9, 2022, the entirety of the funds in the treasury were liquidated and the token was shut down for trading. *See* Exhibit K.

77.     Atbash Protocol purported to have been hacked by a former developer by the alias of Eskrano. Any tokens became worthless as the liquidity pool was pulled. *See* Exhibit K.

### IV.     COUNTS

### Count I: Fraud (As to Mr. Spitzer's Investments in Mr. English's Cryptocurrency Account)

78.     There are five elements to a fraud claim: (1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages. *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521 (1981).

---

[6] The scheme set forth above is a common scam in the cryptocurrency market. In these schemes, the creators of the token make promises that their token is innovative and breaking technology that can fix real world problems in a way that is not actually practical. The creator purports to have superior knowledge and experience in the crypto market and gains the trust of a following. However, shortly after the launch of the token and initial volume spike, the creators pull the liquidity tokens that allow for smooth trading and dump the tokens of the investors. The creator then blames an unidentified team member who the investors only know under their alias. The creator then splits the money with the scape goat or keeps it the entire profits for himself.

79.     Upon information and belief, Mr. English materially misrepresented that he had superior knowledge in the cryptocurrency markets and that Mr. Spitzer was guaranteed to at least receive 100% of his money back. Mr. English had knowledge of the fact that he was actually running a Ponzi Scheme and did not have superior knowledge of cryptocurrency.

80.     Mr. English intentionally induced his victims, specifically Mr. Spitzer, to rely on his representations so that they would invest large sums of money that he never intended to invest.

81.     Upon information and belief, Mr. English targeted the Hassidic Community in Union, New Jersey and form a relationship with its members for the purpose of obtaining victims to give him money to invest in cryptocurrency.

82.     Upon information and belief, Mr. English made the donation to the community for the purpose of gaining the trust of the community and its members.

83.     Upon information and belief, Mr. English held a seminar in the Community and used exaggerated and false cryptocurrency statements, misrepresented his wealth and how he obtained his wealth, to induce victims to invest money in his scheme.

84.     Upon information and belief, Mr. English targeted Mr. Spitzer specifically as a victim to the scheme by paying a commission to his investors to persuade Mr. Spitzer to meet and invest with Mr. English.

85.     Upon information and belief, Mr. English misrepresented his wealth, his expertise, and his investment performance to induce Mr. Spitzer to invest money with him.

86.     Mr. Spitzer justifiably relied upon these representations given the effort made to deceive him by Mr. English and invested a total amount of $ 150,000 for Mr. English to invest in

the cryptocurrency market on his behalf—of which, $100,000 was the initial investment, and $50,000 was additionally invest for the Blue Rose NFT project.

87.     Upon information and belief, Mr. English kept the money and always intended to keep the money.

88.     WHEREFORE, Mr. Spitzer demands payment excess of $ 1,000,000 including interest; attorneys' fees, and punitive damages.

### Count II: Fraud ( Atbash Protocol)

89.     As discussed above, there are five elements to a fraud: "(1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624, 432 A.2d 521 (1981).

90.     Upon information and belief, at all relevant times, Mr. English was the sole owner and operator of Atbash Protocol.

91.     Upon information and belief, Mr. English created Atbash Protocol for the purpose of inducing investors to purchase $BASH tokens at pre-sale and after the launch with the intent to scam them by working alone or in concert with others, to pull the liquidity pool, rendering the token worthless, and keeping the funds for himself.

92.     Upon information and belief, Mr. English knowingly made false representations about the capabilities of the Atbash Protocol project, the intent of the project, and his knowledge and experience in the cryptocurrency market to induce investors into buying $BASH tokens.

93.     Upon information and belief, Mr. English knowingly made false promises and guarantees of wealth that he knew to be untrue to induce Mr. Spitzer to rely on these statements and invest his money.

16

94.     Upon information and belief, Mr. English knowingly used unethical and exacerbated representations such as the Lamborghini calculator and countless guarantees of wealth to investors of $BASH. Upon information and belief, Mr. English knowingly made these representations to Mr. Spitzer personally and through his representations in the teleconference.

95.     Upon information and belief, Mr. English used bait and switch tactics in his initial meeting with Mr. Spitzer to induce him into investing in Atbash Protocol by telling Mr. Spitzer false information and advice about crypto investments then pressuring him to invest in Atbash Protocol.

96.     Mr. Spitzer justifiably relied on these representations and invested $100,000 in Atbash Protocol for $BASH tokens.

97.     Upon information and belief, Mr. English, in concert with others, or own his own, pulled the liquidity, which held Mr. Spitzer's money, and kept it for himself.

98.     Upon information and belief Mr. English used as Eskrano.as a scapegoat by stating that he acted alone in stealing the money.

99.     WHEREFORE, Mr. Spitzer demands judgment in an amount in excess of $1,000,000 including; interest, attorneys' fees; and punitive damages.

**Count III: Fraudulent Misrepresentation (As to Both the Investments Mr. English's Cryptocurrency Account and Atbash Protocol)**

100.     A claim for Fraudulent Misrepresentation requires the plaintiff to show that the defendant made a misrepresentation or material omission of fact; that misrepresentation or omission induced the plaintiff to enter into a contract or purchase something from the defendant; the defendant knew the misrepresentation to be false and intended to induce the plaintiff's reliance ("scienter"); the plaintiff justifiably relied on the misrepresentation or omission; and resulting injury to the plaintiff.. *See Gennari v.Weichert Co. Realtors*, 148 N.J. 582, 610  (1997).

101.    Mr. Spitzer and Mr. English entered into an agreement where Mr. Spitzer provided Mr. English a total of $ 250,000 to invest on his behalf.

102.    Upon information and belief, Mr. English never intended to invest the money on behalf of Mr. Spitzer and intentionally misrepresented both the amount that Mr. Spitzer would receive as a return and instead kept the money for himself.

103.    Upon information and belief, Atbash Protocol was never intended by Mr. English to be used as represented in its whitepapers. Upon information and belief, Mr. English created Atbash Protocol as an intentional scheme to steal in money from investors, including Mr. Spitzer.

104.    Mr. Spitzer justifiably relied upon the representations that Mr. English was investing the money in cryptocurrencies on his behalf and in his best interest, and that Atbash Protocol was a real project created to serve a legitimate purpose.

105.    Mr. Spitzer suffered damages because he lost the money he entrusted to Mr. English. Mr. English was the cause of the damages because, upon information and belief, he kept the money for himself.

106.    WHEREFORE, Mr. Spitzer demands payment an amount in excess of $ 1,000,000 plus interest; attorney's fees; and punitive damages.

## Count IV: Negligent Misrepresentation

107.    To state a claim for negligent misrepresentation, the plaintiff must prove:  (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the

plaintiff reasonably relied on it to his or her detriment. *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

108.    Mr. Spitzer and Mr. English entered into an agreement where Mr. Spitzer provided Mr. English a total of $250,000 to invest on his behalf in the cryptocurrency and the Atbash Protocol and Mr. Spitzer and Mr. English thereby had a fiduciary relationship whereby Mr. English owed a duty of care to Mr. Spitzer to provide accurate assessments, informed advice, and full disclosures and representations.

109.    Upon information and belief, Mr. English never intended to invest the money on behalf of Mr. Spitzer and falsely represented that he would do so, wherein he knew or should.

110.    Upon information and belief, Atbash Protocol was never intended to be used as represented in its whitepapers. Upon information and belief, Mr. English created Atbash Protocol as a scheme to steal in money from investors.

111.    Mr. English knew that Mr. Spitzer was relying on the representations discussed herein for the serious purpose of investing a substantial amount of money.

112.    Mr. Spitzer intended to and did act upon the representations of Mr. English alleged herein and did reasonably rely on said representations provided by Mr. English. Specifically, the representations that Mr. English was investing the money in cryptocurrencies on his behalf and in his best interest, and that Atbash Protocol was a real project created to serve a legitimate purpose.

113.    Mr. Spitzer suffered damages because he lost the money that was entrusted to Mr. English. Mr. English was the cause of the damages because, upon information and belief, he kept the money for himself.

114.     WHEREFORE, Mr. Spitzer demands payment in an amount in excess of $1,000,000 including interest; attorney's fees; and punitive damages.

### Count V: Breach of Fiduciary Duty:

115.     A breach of fiduciary duty cause of action requires the following elements: (1) the defendant had a duty to the plaintiff; (2) the duty was breached; (3) injury occurred to the plaintiff as a result of the breach; and (4) the defendant caused that injury. *Namerow v. PediatricCare Associates, LLC*, 218 A.3d 839 (N.J. App. 2018).

116.     At all relevant times, Mr. English held himself out to be an investment professional with extensive expertise in such wherein he would be acting on behalf of Mr. Spitzer and in Mr. Spitzer's best interest.

117.     Mr. English owed Mr. Spitzer a fiduciary duty because he entered into an agreement with Mr. Spitzer in the capacity of an investment professional, and the agreement was to invest Mr. Spitzer's money into the cryptocurrency markets.

118.     Upon information and belief, Mr. English knew or should have known that he was not qualified to invest money on the behalf of others.

119.     Upon information and belief, Mr. English knew or should have known that Atbash Protocol could not generate the return on investment in excess of 100 percent in thirty days and that Mr. Spitzer's investments were not guaranteed to multiply in such short time.

120.     Mr. English made such representations, upon which, Mr. Spitzer reasonably relied upon as Mr. English went to great lengths to convince Mr. Spitzer that he was qualified to make these investments.

121.     Mr. Spitzer suffered injury because he lost the entirety of the money, that was given to Mr. English to invest on his behalf. Mr. English was the cause of Mr. Spitzer's injury because he never returned Mr. Spitzer's money.

122.     WHEREFORE, Mr. Spitzer demands payment in the amount of $ 1,000,000 including interest; attorney's fees; and punitive damages.

### Count VI: Breach of Contract:

123.     A breach of contract cause of action requires (1) a valid agreement between the parties; (2) plaintiff performed his duties under the agreement; (3) the defendant failed to perform one or more duty under the agreement; and (4) the defendant's breach caused a loss to the plaintiff. *See Goldfarb v. Solimine*, 245 N.J. 326 ( N.J. 2021).

124.     Mr. Spitzer and Mr. English entered into a valid agreement wherein Mr. English was required to invest and manage Mr. English's cryptocurrency investments and the money entrusted to him.

125.     As part of the agreement, Mr. English was required to adhere to Mr. Spitzer's request to return the investment in whole or in part, including any positive or negative returns minus a 10% commission on gains of the investments which Mr. English was to retain for his services within 24 hours of Mr. Spitzer's request. *See* Exhibit E.

126.     Mr. Spitzer performed fully by tendering payment to Mr. English totaling $250,000 to be invested in cryptocurrency markets.

127.     Mr. Spitzer complied with the agreement by making a request to Mr. English to withdraw his investments via Whatsapp.

128.     Mr. English breached the agreement by failing to return Mr. Spitzer's investment within the agreed upon 24 hours or even within reasonable amount of time upon his request.

129.     Mr. English breached the agreement, upon information and belief, by retaining the investment for his personal use and never invested the money into the market.

130.     Mr. Spitzer was injured by the breach because he lost the entirety of his investment.

131.     Mr. English's breach was the cause of Mr. Spitzer's injury because he breached the contract by failing to invest the money and/or return it to Mr. Spitzer.

132.     WHEREFORE, Mr. Spitzer demands payment in excess of $ 1,000,000 including interest; attorney's fees; and punitive damages.

## Count VII: Conversion

133.     The elements of conversion are (1) intent, (2) interference 'to the exclusion of the owner's rights,' and (3) possession, or the right to possession in plaintiff. *See Bondi v. Citigroup, Inc.* 423 N.J. Super 377 (N.J. App. 2011).

134.     Mr. Spitzer and Mr. English entered into a valid agreement wherein Mr. English was required to invest and manage Mr. English's cryptocurrency investments. The money provided to Mr. English by Mr. Spitzers was not to be paid for Mr. English's own gain, apart from the 10% fee that would be provided upon the withdrawal of Mr. Spitzer's funds.

135.     Pursuant to the agreement, Mr. English maintained the duty to exercise care and control of $250,000 of Mr. Spitzer money that was intended to be invested by Mr. English on his behalf.

136.     Upon information and belief, Mr. English intentionally converted the funds for personal use and gain wherein he did not intend to ever return any of Mr. Spitzer's money to him from the alleged investment.

137.     Upon request, Mr. English intentionally interfered to the exclusion of Mr. Spitzer's right to possession of his funds by refusing to return said money pursuant to the agreement of the parties. Mr. English instead intended to keep Mr. Spitzer's money and did so despite requests for its return.

138.     WHEREFORE, Mr. Spitzer demands payment in excess of $ 1,000,000 including interest; attorney's fees; and punitive damages.

### Count VIII: Promissory Estoppel:

139.     Promissory estoppel has three elements: 1) a clear and unambiguous promise; 2) a reasonable and foreseeable reliance by the party to whom the promise is made; and 3) an injury sustained by the party asserting the estoppel as a result of his reliance. *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984) (internal citations omitted).

140.     Mr. English made an unambiguous promise to Mr. Spitzer wherein Mr. English was required to invest and manage Mr. English's cryptocurrency investments and the money entrusted to him and Mr. Spitzer would be entitled to full return of his funds with 24 hours notice.

141.     Mr. Spitzer made a reasonable and foreseeable reliance on Mr. English's promise as Mr. English held himself out to be experienced and legitimate and to have superior knowledge of cryptocurrency investments.

142.     As part of the promise, Mr. English was required to adhere to Mr. Spitzer's request to return the investment in whole or in part, including any positive or negative returns minus a 10% commission on gains of the investments which Mr. English was to retain for his services within 24 hours of Mr. Spitzer's request.

143.     Mr. Spitzer tendered payment to Mr. English totaling $250,000 to be invested in cryptocurrency markets.

144.     Mr. Spitzer made a request to Mr. English to withdraw his investments via Whatsaapp pursuant to the promise made by Mr. English.

145.     Mr. English failed to uphold his promise and to return Mr. Spitzer's investment within the agreed upon 24 hours or even within reasonable amount of time upon his request.

146.     Mr. English broke his promise, upon information and belief, by retaining the investment for his personal use and never invested the money into the market.

147.     Mr. Spitzer was injured by the breach because he lost the entirety of his investment as a result of his reliance on Mr. English's promise.

148.     WHEREFORE, Mr. Spitzer demands payment in excess of $ 1,000,000 including interest; attorney's fees; and punitive damages.

## Count IX: Unjust Enrichment

149.     The elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *See VRG Corp. v. GKN Realty Corp*, 135 N.J. 539 ( N.J. 1984).

150.     Upon information and belief, Atbash protocol was a scheme to induce investors to fund the launch of the cryptocurrency and for Mr. English and his team to retain the entirety of the investments by intentionally failing the launch of the token.

151.     Upon information and belief, it was Mr. English's intent, at the time of its creation, and at all times throughout the project, to enrich himself at Mr. Spitzer's expense by keeping all monies intended for investment for himself.

152.    Mr. English did in fact retain Mr. Spitzer's money, thereby enriching himself at Mr. Spitzer's expense as he has essentially entrusted $250,000 to Mr. English without any corresponding benefit.

153.    It is against equity and good conscience to permit the Mr. English to retain Mr. Spitzer's money given his reasonable reliance on Mr. English's effort to convince him that he was legitimate, trustworthy and should be entrusted with Mr. Spitzer's money.

154.    Given Mr. English's intent to deceive, lie and steal from Mr. Spitzer, equity and justice demands that Mr. Spitzer be made whole to prevent Mr. English from being unjustly enriched from Mr. Spitzers $250,000.

155.    WHEREFORE, Mr. Spitzer demands payment in excess of $ 1,000,000 including interest; attorney's fees; and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Spitzer respectfully request the Court enter judgment against Mr. English as follow:

a.   Granting Mr. Spitzer damages in an amount in excess of $ 1,000,000 including interest.

b.   Granting Mr. Spitzer punitive damages.

c.   Granting Mr. Spitzer attorney's fees;

d.   Any other relief the Court deems just and proper.